**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

In re:

PRASERT LIMSUMANG,

AND

PAGE LIMSUMANG,

          Debtors.

Case No. 25-12066-BFK
Chapter 11

## ORDER DENYING CREDITOR'S MOTION TO DISMISS

This matter comes before the Court on the Motion of Hunan Café Chantilly, Inc. ("the Creditor" or "Hunan Café") to dismiss this case. Docket No. 26. The Debtors, Prasert Limsumang and Page Limsumang, filed an Opposition to the Motion. Docket No. 30. The Creditor filed a Response to the Opposition. Docket No. 36. The Court heard the evidence and the parties' arguments on December 16, 2025. For the reasons stated below, the Court will deny the Creditor's Motion.

### FINDINGS OF FACT

The Court, having heard the evidence, makes the following findings of fact.

*A. The State Court Proceedings.*

1.      The Debtors are individuals residing in Fairfax, Virginia.

2.      The Debtors are in the restaurant business. At some point, they opened a restaurant in Chantilly, Virginia. The Debtors leased the premises for the restaurant from Hunan Café.

3.     The restaurant was not successful. Hunan Café took the space back, and the Debtors signed a Confessed Judgment Promissory Note for the balance due under the Lease.

4.     After a default under the Note, Hunan Café confessed judgment against the Debtors in the Circuit Court of Fairfax County.

5.     The Debtors moved to vacate the confessed judgments. Ms. Limsumang was successful in having her confessed judgment vacated; Mr. Limsumang was not.

6.     Hunan Café sought post-judgment debtor's interrogatories against Mr. Limsumang, at which point the Debtors decided to seek the advice of bankruptcy counsel.

B.   *The Debtors File for Bankruptcy.*

7.     The Debtors filed a Voluntary Petition under Chapter 11 with this Court on October 6, 2025. Docket No. 1.

8.     In 2024, the Debtors had combined gross income of $369,178.43. Statement of Financial Affairs, Line 4.

9.     The Debtors own a home in Fairfax, VA, with a stated value of $772,820.00. Schedule A/B.

10.    They have a mortgage in the amount of $510,997.00, with a monthly mortgage payment of $4,358.33. Schedule D; Schedule J, Line 4.

11.    They have joint monthly income of $16,608.17, which includes $2,300.00 in Social Security benefits for their parents, but this is offset by a deduction of $2,500.00 for support for their parents on Schedule J. Schedule I, Lines 8h, 12; Schedule J, Line 19.

12.    The Debtors' Schedule J lists deductions for: (a) their children's education in the amount of $7,000.00 per month; and (b) $1,212.75 for a BMW X1 which appears to have been

2

purchased in January 2025; and (c) $694.15 per month for a 2021 BMW X3, which is used exclusively by their daughter. Schedule J, Lines 8, 17a. 17b; Schedule D.

13.     Their net monthly income is a negative ($3,012.06). Schedule J, Line 23c.

14.     In their Amended Schedules E/F the Debtors listed a total of seventeen (17) unsecured creditors, with a total of $608,250.89 in unsecured debt. Amended Schedules E/F.[1]

15.     Hunan Café is listed with a debt in the amount of $492,528.34, which constitutes 81% of the Debtors' unsecured debt. Schedule E/F, Line 4.9. There are sixteen (16) other unsecured creditors listed in Schedule E/F, with a total of 19% of the unsecured debt.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

In the Fourth Circuit, in order to dismiss a Chapter 11 case for bad faith, the Court must make findings of both: (a) subjective bad faith; and (b) objective futility. *In re Carolin Corp. v. Miller (In re Carolin Corp.),* 886 F.2d 693 (4th Cir. 1989). The Court will turn to these two prongs, below.

The Creditor bears the burden of demonstrating a prima facie showing of the Debtors' lack of good faith. *In re Paolini*, 312 B.R. 295 (Bankr. E.D. Va. 2004). Once the creditor has made a prima facie showing, the debtor has the burden of proving that the petition was filed in good faith. *Id*.

---

[1] This number is after subtracting $492,528.84 for Sumontita Disaywathana, who is a co-guarantor on Hunan Café's Lease. Her claim is duplicative of Hunan Café's claim.

   *A.   Subjective Bad Faith.*

In *Carolin Corp.,* the Fourth Circuit held that aim of the subjective bad faith prong  is "to determine whether the petitioner's real motivation is 'to abuse the reorganization process' and 'to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities.'" *Id.* at 305.

The Creditor argues that there is subjective bad faith because this is essentially a two-party dispute, which can be an indicator of bad faith. *See In re Paolini*, 312 B.R. 295, 307–09 (Bankr. E.D. Va. 2004). Although the Creditor's claim constitutes 81% of the unsecured creditor class, there are sixteen (16) other unsecured creditors, with a total of $115,722.00 in debt, or 19% of the claims, listed in the Debtor's Amended Schedules E/F. This is not, in the Court's view, solely a two-party dispute.

Further, there are no other indicia of bad faith here, though the Court does have some serious concerns about the Debtors' monthly expenditures, as discussed below. This is the Debtors' first bankruptcy case. This is not a single-asset real estate case where a secured creditor's claim is under water, and the creditor has the undisputed right to foreclose on the property. The Debtors, being individuals, are not a newly created entity formed for purposes of filing a bankruptcy case (the so-called "new debtor syndrome"). There is no allegation that the Debtors have been dishonest or have stated anything inaccurately in their Schedules. There is no allegation of any pre-petition transfers that would give rise to an inference of bad faith.

The Debtors' home in Fairfax, Virginia is listed at $772,820, with a mortgage payment of $4,853.33 per month. Schedule A/B; Schedule J, Line 4. They list a monthly car payment of $1,212.75 for a BMW purchased in January 2025 (Schedule B; Schedule J, Line 17a), and a vehicle

for their daughter for which they are paying $694.15 per month (Schedule J, Line 17b) both of which will be of concern to the Court at a confirmation hearing (together, the car payments total $1,907.00 per month). They also list *$7,000.00 per month* in educational expenses for their child or children (*See* Part B, below), which almost certainly will not be allowed when the case comes before the Court on a confirmation hearing. While the expenses for the vehicles, and the line item in the Debtors' budget for educational needs for their children, are concerning to the Court, the Court does not find that including these expenses leads to a conclusion of subjective bad faith at the time of the filing of the bankruptcy petition.

The Court finds that the Creditor has not met its burden of making a prima facie showing of subjective bad faith.

B. *Objective Futility.*

The Court, having found that the Creditor has not met its initial burden on subjective bad faith, need not address the objective futility prong because *Carolin Corp* stated the two prongs in the conjunctive—the Creditor must meet its *prima facie* burden on both issues or the motion fails. That having been said, the Court is unable to conclude that there is objective futility at this early stage of the case.

The Debtors jointly have $16,608.17 in monthly income. Schedule I, Line 12. This includes $2,300.00 in Social Security income for one of their parents, but this is offset by $2,500.00 in support for the parents on Schedule J. Schedule I, Line 8h; Schedule J, Line 19. They state that they have a negative ($3,012.06) in monthly net income (Schedule J, Line 23c), but this results largely from a $7,000.00 per month line item for their children's educational costs (Schedule J, Line 8). Under the Means Test, the Debtors would only be able to deduct $2,275.00 *per year, per child* for educational expenses. 11 U.S.C. § 707(b)(2)(A)(iv). The Debtors appear not to be subject

5

to the Means Test, for purposes of filing eligibility, because their debts are primarily business debts (the Guaranty of the Creditor's Lease), but even under the pre-BAPCPA standard of reasonable and necessary expenses, $84,000.00 per year seems excessive. Section 1129(a)(15) of the Code requires for purposes of confirmation that individual debtors either pay their unsecured creditors in full, or pay their projected disposable income as defined by Section 1325(b)(2) (which then refers to the Means Test of Section 707(b)) for a five-year period. It is unlikely that the Debtors will be permitted at a confirmation hearing to divert $84,000.00 per year to the support of their adult children's education, at the expense of their creditors unless the Plan is a consensual plan. With the deletion of the $7,000.00 expense, the Debtors would be roughly $3,000.00 to the positive on a monthly basis.[2]

The Court is also concerned that the Debtors are spending $1,907.00 per month on the two vehicles, including $695.00 per month for a BMW for their minor daughter. This may also be the subject of some concern at a confirmation hearing.

The Debtors listed $194,010.78 in cash as of the case filing, which is an unusually large amount of money for individual debtors in this Court. Schedule A/B, Line 17.1. Presumably, this amount of money could form the basis, along with their monthly earnings, for a Plan of Reorganization. The Debtors would be well-advised not to dissipate these funds during the course of the case.

It is also possible that Hunan Café's claim may not be as large and insurmountable as it might seem (which is to say, it may be less of a percentage of the overall unsecured claims than it

---

[2] The Debtors listed a daughter, age 17, in their Schedule J as a dependent. Ms. Limsumnang referenced the support of her "children's" educational needs in her testimony, so they may have one or more adult children in college whom they would like to support. Under the statute cited above, the allowance of $2,275.00 per year is only allowed for "each dependent child less than 18 years of age." It appears that the one daughter will turn 18 during the first year of this case.

may first appear). Hunan Café's claim arises out of the Debtors' guaranty of a commercial lease of real property. Its claim may be capped by Bankruptcy Code Section 502(b)(6). *See In re Wigley*, 951 F.3d 967 (8th Cir. 2020) (capping landlord's claim in a fraudulent transfer proceeding against a lease guarantor); *Arden v. Motel Partners (In re Arden)*, 176 F.3d 1226, 1229 (9th Cir. 1999) (applying cap to guarantor because "plain reading of the section underscores that it is the claim of the lessor, not the status of the lessee—or its agent or guarantor—that triggers application of the cap"); *In re Electrical Acquisition, LLC*, 342 B.R. 831 (Bankr. M.D. Fla. 2005); *In re Ancona*, 2016 WL 828099, 2016 Bankr. LEXIS 636 (Bankr. S.D.N.Y. 2016) ("In light of the overwhelming courts (including the Southern District Bankruptcy Court's decision in *Episode USA*) that have found the damages cap to apply to claims of lessors against debtor-guarantors of leases, and the policy goals that would be served here based upon the 'plain meaning' statutory construction under *Ron Pair*, the Court concludes that Section 502(b)(6) applies to cap the Landlord's claim against the Debtor under the Guaranty.") The Court need not decide whether Hunan Café's claim is capped under Section 502(b)(6) at this stage of the case, or in what amount, but if it is capped, this would make confirmation of a plan much easier.

On balance, the Court cannot find that there is objective futility at this early stage of the case. The Court, therefore, will deny the Creditor's Motion. The Debtors are warned, however, that: (a) if they spend $7,000.00 per month or anything like it on their children's education while this case is pending, this could be grounds for a dismissal for post-petition bad faith, or a conversion to Chapter 7; (b) the $194,010.78 in cash should not be dissipated during the course of the case; and (c) the expenses for the vehicles are of continuing concern to the Court. On the other

hand, if the Debtors can achieve a consensual plan of reorganization, then Chapter 11 will have served its purpose for them.[3]

The Court, therefore, will deny Hunan Café's Motion to Dismiss.

CONCLUSION

It is **ORDERED**:

1.  Hunan Café's Motion to Dismiss (Docket No. 26) is **DENIED.**

2.  The Clerk will mail copies of this Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: Dec 30 2025

/s/ Brian F Kenney

HONORABLE BRIAN F. KENNEY
CHIEF U.S. BANKRUPTCY JUDGE

Alexandria, Virginia

Entered On Docket: Dec 31 2025

Prasert Limsumang
11403 Delsignore Drive
Fairfax, VA 22030
*Chapter 11 Debtor*

Madeline A. Trainor
Redmon, Peyton & Braswell L.L.P.
510 King Street
Suite 301
Alexandria, VA 22314
*Counsel for Debtors*

Page Limsumang
11403 Delsignore Drive
Fairfax, VA 22030
*Chapter 11 Joint Debtor*

Jack Frankel
1725 Duke Street,
Suite 650
Alexandria, VA 22314
*Counsel to U.S. Trustee*

Bandar K. Al-Saif
Odin Feldman Pittleman, PC
1775 Wiehle Avenue,
Suite 400
Reston, Virginia 20190
*Counsel for Hunan Café Chantilly, Inc.*

---

[3] This Order is not an injunction. Rather, the Court is warning the Debtors on what may be necessary to achieve a successful reorganization, especially if the Plan is non-consensual.

8